UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| ARNOLD CHARLES | CIVIL ACTION |
| Appellant | NO. 07-1172 |

VERSUS

| MICHAEL J. ASTRUE | JUDGE JAMES T. TRIMBLE, JR. |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE JAMES D. KIRK |
| Appellee | |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Arnold Charles ("Charles") filed an application for Supplemental Security Income ("SSI") on April 2, 2004 and Disability Insurance Benefits ("DIB") on March 18, 2004 alleging a disability onset date of August 1, 2001 due to swelling of knees, chest pain and tingling and numbness in his hands (R.25, 55, 519). The applications were denied June 23, 2004 and Charles filed a request for hearing on July 8, 2004 (R. 35). A video hearing was held on February 3, 2006 before Administrative Law Judge Cam Oetter. Charles and his attorney, Tina Wilson, appeared at a teleconference center in Lake Charles, Louisiana while the ALJ and Vocational Expert ("VE"), Emma Vasquez, appeared via video in Houston, Texas. The ALJ issued a decision dated March 23, 2006 finding Charles not disabled under sections 216(1), 223(d) and 1614(a)(3)(A) of the Social Security Act (R. 28).

Charles filed a request for review with the Appeals Council on

April 5, 2006. On May 16, 2006, the Appeals Council denied his request for review. On July 19, 2006, newly retained counsel issued a letter advising of the alleged errors made by the ALJ in support of his request for appeal (R. 14-15). Additionally, a letter of the same date set forth a request for an extension of time to file an appeal and request review of the hearing decision because, among other factors, new and material evidence needed to be submitted (R. 13).

The Appeals Council granted the extension, obtained Charles' new evidence and set aside its May 16, 2006 denial of Charles' request for review (R. 9-12). On July 27, 2006, after reviewing the new evidence, the Appeals Council again denied Charles' request for review of the hearing decision (R. 7-8). On June 13, 2007, the Appeals Council issued a letter to Charles' attorney advising that the request to reopen and change the decision was denied. However, he was advised as to the time frame in which to file a civil action requesting court review. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") (R. 5-6).

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically

determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the hearing, Charles was 50 years old. He possessed a limited education, having completed the tenth grade (R. 518-519). He lived with family, cared for himself and performed household chores, with the exception of maintaining his yard (R. 62-65). Charles spent most of his time playing cards and dominoes with his nephews and cousins (R. 520). He complained of constant pain in his knees which he treated with aspirin, Advil or Tylenol and he complained of chest pain (R. 73-74, 519-521). He used the charity hospital/clinic system for healthcare regularly, so he did not see the same doctor each visit (R. 520, 523). However, he did see his cardiologist, Dr. Kahn, on a regular basis (R. 523).

Charles' work history consisted mainly of construction work, but he did work at a feed market loading and unloading trucks. It was at this job, in 1979, that he sustained a work related injury to his left tibia (R. , 96, 528-29). Charles underwent surgery on his left knee in 1979 and his right knee in 1980 (R. 96). He advised that the surgery seemed to help, but as time passed, the

3

pain became progressively worse (R. 526). In August of 2001 he was forced to quit his construction job due to the pain and swelling in his knees and he has not worked since that time (R. 519).

Charles was diagnosed with degenerative joint disease in his knees (R. 98). He had trouble crawling or kneeling. He could not sit more than thirty minutes at a time, could stand only one hour and during that hour he had to move around, he elevated his legs two to three times a day for an hour to an hour and a half at a time and he was limited to lifting ten to twenty pounds due to an inability to squat (R. 524-528).

In addition to his knee problems, Charles was diagnosed with congestive heart failure (CHF). He was followed at the CHF clinic at M.O. Moss Hospital and received a stent in 2005 to relieve the blockage. Charles complained of constant pain since the placement of the stent, but he did admit that the pain was more severe prior to the procedure (R. 519-520). Charles also complained that he had numbness in his fingers because of his poor circulation which caused some difficulty grasping things (R. 527).

The ALJ carefully considered the entire record and found Charles had not been under a disability, as defined by the Social Security Act, from August 1, 2001 through the date of the decision, March 23, 2006. In arriving at this conclusion, the ALJ reviewed, among other things, the medical records which indicated Charles had the following severe impairments: degenerative joint disease of

4

the right knee, one vessel coronary artery disease (stented), borderline I.Q. and substance abuse. The ALJ also determined that none of these impairments, alone or in combination, met or equaled any of the Listings in 20 C.F.R. 404, Subpart P, Appendix 1.

The ALJ noted an improvement with respect to Charles' CHF over the course of 2005. The ALJ further noted Charles' degenerative joint disease and coronary artery disease prevented him from returning to his past relevant work and his borderline I.Q. restricted him to simple, repetitive work tasks and incidental contact with the public. However, Charles would still be able to perform a full range of light work with the aforementioned restrictions.

The ALJ relied upon the testimony provided by the VE in response to his hypothetical. The ALJ asked whether someone who was 50 years old, could perform light work with occasional lifting of 20 pounds, frequent lifting of 10 pounds, could stand, walk and sit, with normal breaks, six hours in an eight hour day but could not push or pull, climb ladders, ropes or scaffolds but could climb ramps and stairs and could balance, stoop, kneel, crawl or crouch on an occasional basis and was limited to simple, repetitive tasks could find employment. The VE responded that work existed in significant numbers in the national economy for this type of individual. Specifically, she noted the positions of production assembler, small products assembler and electrical accessories

assembler (R. 530-532).

At the hearing, Charles' attorney cross examined the VE and questioned whether it would be difficult to perform the suggested jobs with one's legs elevated and the VE noted that it would be. Charles' attorney also questioned whether these positions would require one to have fine manipulation skills and the VE advised that the small products assembler might have such issues. No other questions were asked by Charles or his attorney.

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry

factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### Issues

Charles raises the following issues for judicial review on appeal:

1. The ALJ's findings are inconsistent with the new and material evidence submitted to the Appeals Council post hearing; and

2. The vocational testimony, upon which the ALJ's decision is based, is facially unreliable as the reasoning demands of the job conflict with the RFC.

### New Evidence

The regulations provide that the Appeals Council will consider additional evidence if it is new and material and relates to the

period on or before the ALJ's decision. 20 C.F.R. §404.970(b), §404.976(b)(1). Materiality of new evidence depends upon whether (1) the evidence related to the time period for which the disability benefits were denied, and (2) there is a reasonable probability this new evidence would change the outcome of the ALJ's decision. Bradley v. Bowen, 809 F.2d 1054 (5th Cir. 1987).

The new evidence at issue here is an echocardiogram taken on March 13, 2006, two weeks after the ALJ issued his decision. According to the report, Charles' ejection fraction was 32%; the IVSd/LVPWd combination was 2.44 cm; the LA Diam was 4.54 cm (a mild enlargement); and, mitral regurgitation was moderate. Charles contends that these medical findings "essentially" or "likely" meet the requirements set forth in Listing 4.02, and if the ALJ had the benefit of this echocardiogram before he rendered his decision, he might have found Charles met the listing. Therefore, remand is appropriate.

Listing 4.02 details the requirements one must meet or equal to be found disabled due to chronic heart failure. As conceded in Charles' brief, the new medical evidence does not show that his condition meets or equals the Listing. While he does have systolic failure (as characterized by his reduced ejection fraction), Charles' left ventricular end diastolic dimensions are not greater than 6.0 cm nor is his ejection fraction 30 percent or less during a period of stability. Therefore, he does not meet the first

requirement set forth under part A. Charles also fails to meet the second requirement of part A because he does not have either diastolic failure nor a IVSd/LVPWd totaling 2.5 cm or greater on imaging nor a normal or elevated ejection fraction during a period of stability. As Charles' condition does not meet these aspects of the second requirement under part A, it is irrelevant that the new evidence reveals an enlarged left atrium greater than or equal to 4.5 cm.

Though there is no need to evaluate whether Charles meets one of the requirements set forth in part B (because he does not meet either requirement in part A), it is worth noting that Charles does not argue and the undersigned does not find evidence in the medical records to support a determination that Charles meets any one of the requirements set forth in part B of Listing 4.02. Accordingly, as Charles' chronic heart failure does not meet or equal the Listing, there is not a reasonable probability that the new evidence would have changed the outcome of the decision and remand is not appropriate.

Conflict between the RFC and vocational testimony

Charles also contends that the vocational testimony on which the ALJ's decision is based is facially unreliable because it conflicts with the Dictionary of Occupational Titles ("DOT"). Specifically, he argues that the limitation of being able to perform only simply, repetitive tasks is inconsistent with a

9

reasoning level of 2, which is assigned to the jobs of production assembler, small parts assembler and electrical accessories assembler in the DOT.

As several courts have held, reasoning level 2 requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with a residual functional capacity to perform simple, routine work tasks. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005). Also, <u>Meissl v. Barnhart</u>, 403 F.Supp.2d 981, 9840985 (C.D.Cal. 2005); <u>Flaherty v. Halter</u>, 182 F.Supp.2d 824, 850-851 (D.Minn. 2001). See also, <u>Money v. Barnhart</u>, 91 Fed.Appx. 210, 214 (3d Cir. 2004); <u>Busch v. Astrue</u>, 2008 wl 2331015 (D.Neb. 2008); <u>Miller v. Astrue</u>, 2008 wl 759083 (S.D.W.Va. 2008); <u>West v. Astrue</u>, 2008 wl 2024963 (M.D.Ga. 2008); <u>Squier v. Astrue</u>, 2008 wl 2537129 (C.D.Cal. 2008); <u>Riggs v. Astrue</u>, 2008 wl 1927337 (W.D.Wash. 2008).

The evidence supports the determination that Charles can perform this type of work. Clinical psychologist, Alfred Buxton, advised in his report that Charles was able to understand, remember and complete simple instructions consistent with unskilled work and his cognitive process is simple and concrete but logical (R. 105, 119). Therefore, the ALJ did not err in finding Charles can perform work which requires a reasoning level of two.

10

Charles also argues that a reasoning level of 2 requires attention to detail. However, the use of the word "detailed" in the DOT is not equivalent to the word "detailed" as used in the Social Security regulations. In the DOT, a reasoning level of 2 means the worker must be able to follow "detailed" instructions which are "uninvolved." Therefore, a DOT reasoning level of 2 is consistent with a RFC to perform simple, routine, repetitive work tasks. Riggs v. Astrue, 2008 WL 1927337 (W.D.Wash. 2008), citing Meissl v. Barnhart, 403 F.Supp. 2d 981, 9840985 (C.D.Cal. 2005). Also, Money, 91 Fed. Appx. at 214; West v. Astrue, 2008 WL 2024963 (M.D.Ga. 2008).

It is noted that Charles did not raise or develop this issue at the hearing. Various implicit conflicts are possible and the categorical requirements listing in the DOT do not and cannot satisfactorily answer every such situation. The Fifth Circuit has held that claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT and then present that conflict as reversible error when the conflict is not deemed sufficient to merit adversarial development in the administrative hearing. Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000), and cases cited therein.

Therefore, Charles' assertion that he cannot perform DOT reasoning level two work because the ALJ limited his duty to work

involving simple, repetitive tasks is incorrect as a matter of law. Reasoning level 2 work is not inconsistent with work involving simple, repetitive tasks and there is no conflict between the DOT and the VE's testimony and conclusions. Therefore, this ground for relief is without merit.

## Conclusion

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find there is substantial evidence in the record as a whole to support the Commissioner's decision and that the Commissioner's decision comports with all relevant legal standards. <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992).

Accordingly, IT IS RECOMMENDED that Charles' appeal be DENIED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of August, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE